UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
ALICE LEE,                         :
                    Plaintiff,     :           Pro Se
                                   :
        -against-                  :         04 Civ. 8787 (THK)
                                   :
HEALTHFIRST, INC., a/k/a           : **MEMORANDUM OPINION AND ORDER**
HF MANAGEMENT, INC., a/k/a         :
A PLUS, INC.,                      :
                                   :
                    Defendant.     :
----------------------------------X

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

Plaintiff, Alice Lee, a fifty-year-old Chinese female, originally from Taiwan, was a Manager of Sales for Defendant HealthFirst, Inc. ("HealthFirst"). She brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-17 ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 ("the ADEA"), alleging employment discrimination based on age, gender, race, and national origin, as well as unlawful retaliation. Pending before the Court is Defendant's motion to dismiss Plaintiff's Second Amended Complaint, pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, for failing to provide a short and plain statement of facts showing that Plaintiff is entitled to relief and failing to state a claim for relief. For the reasons that follow, Defendant's motion is denied.

**BACKGROUND**

I.  Procedural History

On December 29, 2004, Plaintiff filed her original Complaint. By Order dated December 29, 2004 ("Dec. 29 Order"), the Court

**COPIES MAILED**
**TO COUNSEL OF RECORD ON** 1/24/06

(Pauley, J.) directed Plaintiff to submit an amended complaint to comply with Rule 8. In the Order, Judge Pauley directed Plaintiff to "provide a short and plain statement of the relevant facts supporting each claim" against Defendant, and to "allege any facts indicating that she was discriminated against due to her gender, national origin or age, including dates of relevant events, names of relevant persons and a description of what occurred." (Dec. 29 Order at 4.)

Plaintiff filed the First Amended Complaint on February 28, 2005. In an Order dated July 1, 2005, without expressly dismissing the Amended Complaint, Judge Pauley again granted Plaintiff leave to replead and set forth a short and plain statement of her claim. (See Order, dated July 1, 2005.) On July 29, 2005, Plaintiff filed her Second Amended Complaint, which is the subject of the instant motion.

## II.  Factual Background

Plaintiff is a fifty-year-old Chinese female whose nationality is Taiwanese. (See Defendant's Affirmation in Support of Motion to Dismiss ("Def.'s Aff.") ¶ 10.)  Defendant Healthfirst engages in marketing healthcare programs to individuals who qualify for government benefits such as Child Health Plus and Medicare. (See id. at 3, ¶ 13.)  Plaintiff was originally employed by Defendant to work as a bilingual sales representative. (See id.)  Plaintiff was assigned to a sales team consisting of bilingual employees of Chinese descent. (See id.; Second Amended Complaint ("Second Am.

2

Compl.") ¶ 4.)  This team was supervised by Stephanie Wu ("Wu"),
who was the Associate Director of the Sales Department at
HealthFirst. (See Second Am. Compl. ¶ 1; Def.'s Aff. at 4, ¶ 12.)

On or about May 2003, Plaintiff's sales team was divided into
two teams. (See Def.'s Aff. at 4, ¶ 13.)  Each team was to be
supervised by a sales manager, who would report directly to Wu.  Wu
recommended that Plaintiff be promoted to manager of one of the
newly created teams, and Plaintiff accepted the promotion. (See
Second Am. Compl. ¶ 1; Def.'s Aff. ¶ 14.)  Plaintiff alleges that,
shortly after her promotion, she became aware of discrepancies
between the employee benefits Wu had promised her and those
received by managers of other teams. (See Second Am. Compl. ¶¶ 2,
8.)  Specifically, Plaintiff alleges that, unlike other managers,
she never received any managerial training. (See id. at 9.)
Plaintiff also alleges that other newly promoted male managers were
given the latest model company car and received their standard
managerial package within one week of their promotion, while she
never received her managerial benefits and was given "a very bad
shape and dangerous condition company car – which failed to pass
inspection." (See id. at 9-10.)  Whenever Plaintiff approached Wu
about these discrepancies, Wu always told her that Wu would "take
care of it." (Id. ¶ 2.)  Wu "assured [Plaintiff] that she [would]
honor those promises and those benefits." (Id.)  Plaintiff also
alleges that she was never given a raise on her base salary, which
Defendant promised, even "after almost five years consecutive

3

excellent performance in the company," while others had received yearly raises of at least five to seven percent on their base salaries. (See id. at 10.)

Plaintiff alleges that, beginning in June 2003, her team members complained to her about the team's isolation from other teams. (See id. ¶¶ 3-4.) Specifically, they complained about the lack of division meetings and Defendant's failure to provide them with the company's rules and regulations, which other teams had received. (See id. ¶ 4; Instances of Discrimination & Unequal Treatments ¶ 5A, attached as Exhibit to Second Am. Compl.[1]) The team did not want to be classified as the "Asian Team" and "wanted to be actively involved in the company's events and activities." (Second Am. Compl. ¶ 4; see also Instances of Discrimination & Unequal Treatments ¶ 7.) Plaintiff alleges that the team was prevented from "participat[ing] in any company event while the other teams [were not]." (Instances of Discrimination & Unequal Treatments ¶ 3.)

On September 17, 2003, Gilbert Marchany ("Marchany"), Wu's supervisor (see Second Am. Compl. ¶ 2), held a meeting with Plaintiff and Wu (see id. ¶ 8). Plaintiff raised the issue of the disparate treatment she and her team had allegedly received. (See id.) Plaintiff alleges that

---

[1]    Under the heading "Instances of Discrimination & Unequal Treatments," there are two paragraphs that are numbered "5." For convenience, the first of these paragraphs will be identified as "5A" and the second as "5B."

4

> [she] specifically requested to open proper
> communication channels for all company's
> notice and announcement, and asked not to be
> isolated from other teams in the company, plus
> to have routine team and division meetings and
> to be informed of all company policy and
> announcements.

(See id.) Plaintiff also addressed at this meeting the issue of
the alleged disparate treatment she had received regarding the
managerial benefits promised to Plaintiff by Wu. (See id.)
According to Plaintiff, Marchany directed Plaintiff "to not
communicate directly with him anymore," and said, "I don't care how
your team operates, you Chinese know how to deal with your own
people." (Id. ¶ 9; see also Instances of Discrimination & Unequal
Treatments ¶ 5B.) Plaintiff alleges that other teams had direct
communication with company officials and had their grievances and
"similar issues rapidly resolved without any problems." (Id. at 11;
see also Instances of Discrimination & Unequal Treatments ¶ 5B.)

Plaintiff alleges that on September 22, 2003, her team members
were called to a meeting with Marchany and George Huge ("Huge"),
Director of Outreach Events, to discuss an incident regarding
company violations. (See Second Am. Compl. ¶¶ 10-11.) After that
meeting, her team members "experienced different levels of
harassment by the Defendant . . . ." (Id. ¶ 11.) After Marchany
and Huge learned that the employees wanted to leave the company due
to unfair treatment and ongoing harassment, Marchany called another
meeting. (See id. at 10.) At that meeting, Marchany "pointed to
each and everyone in a close distance and yelled at them and asked

'You want to go too? Go now.' When he heard [] no response, he raised his voice and pointed his finger and asked each and everyone at the meeting 'You, Chinese people, don't play with me. You, you, you stay or go.'" (See id. at 10-11.) Plaintiff's team members were subsequently terminated or quit their jobs. (See id. at 11 & ¶ 11.)

Plaintiff contends that on September 23, 2003, at a meeting with Wu and Joe Chase ("Chase"), Vice President of the Marketing Department, she voiced complaints regarding internal management at Healthfirst. (See Second Am. Compl. ¶ 12.) At the meeting, she once again complained about the disparate treatment she had received with regard to her promotion. (See id.)[2] Plaintiff alleges that the issues she raised were not addressed, and that instead, she "was warned not to get involved in any protest activities with the team again . . . ." (See id.)

On October 25, 2003, Plaintiff did not receive her quarterly bonus check. (See id. ¶ 27.) Plaintiff alleges that her bonus was withheld by Defendant in retaliation for her "protest." (See Instances of Retaliation, at 3, ¶ 5B, attached as Exhibit to Second Am. Compl.[3]) She questioned Wu about the bonus and warned that if

_____

[2] Although the specifics of her complaint to management are not set forth in the Second Amended Complaint, the Court assumes that, as previously alleged, Plaintiff complained about failing to receive her managerial benefits. (See Second Am. Compl. ¶ 8.)

[3] Under the heading "Instances of Retaliation," there are two paragraphs that are numbered "5." For convenience, the first of these paragraphs will be identified as "5A" and the second as

she did not receive the check, she "[would] take necessary action against the company (EEOC)." (Second Am. Compl. ¶ 29.)

On November 3, 2003, Plaintiff sent a letter to James Boothe, who was Defendant's Chief Operating Officer. (See Second Am. Compl. ¶ 31 (referring to a Nov. 3, 2003 letter from Plaintiff to "Jim Booth"); Def.'s Aff. ¶ 39 (referring to a Nov. 3, 2003 e-mail letter from Plaintiff to "James Boothe").) In the letter, Plaintiff inquired about her bonus check, and suggested that she was a victim of retaliation. (See id.)

On November 10, 2003, at a meeting Plaintiff attended with Marchany, Wu, and Allison Gundel ("Gundel"), Manager of the Human Resources Department (see Second Am. Compl. ¶ 7), Plaintiff's employment was terminated (see id. ¶ 32). When Plaintiff asked Marchany for the reason for her termination, Marchany answered, "no reason is my reason, because you don't deserve the bonus . . . ." (Id.) Marchany continued to mumble other words. (See id.) When Plaintiff asked him to speak louder, Marchany yelled, "You are wors[e] than my mother, you Chinese old woman. Now get out of my office . . . . " (Id.) Plaintiff contends that her employment was terminated in retaliation for her voicing complaints.

Plaintiff also contends that she received disparate treatment on account of her age with respect to promotions. (See Instances of Discrimination & Unequal Treatments ¶ 2.) Specifically, Plaintiff

---

"5B."

7

alleges that she had a better background, more experience, and higher seniority than the younger, less experienced manager who was promoted to be the Associate Director. (See id.)

**DISCUSSION**

I.   Standard of Review

     A.   Rule 8

Rule 8 requires that a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and that such a statement need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 998 (2002) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)); see also Aguilar v. N.Y. Convention Ctr. Operating Corp., No. 00 Civ. 4637 (CBM), 2002 WL 844397, at *2 (S.D.N.Y. May 2, 2002). Fair notice is "that which will enable the adverse party to answer and prepare for trial . . . ." Wynder v. McMahon, 360 F.3d 73, 79 (2d Cir. 2004); see also Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988).

The Supreme Court has observed that Rule 8's "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz, 534 U.S. at 512, 122 S. Ct. at 998; see also Scutti Enters., LLC. v. Park Place Entm't Corp., 322 F.3d 211, 215 (2d Cir. 2003) ("other devices

besides pleadings" are available "to define the facts and issues and to dispose of unmeritorious claims.") Similarly, the Second Circuit has noted that Rule 8 is "fashioned in the interest of fair and reasonable notice, not technicality." See Scutti, 322 F.3d at 215. Thus, "the district court could only correctly dismiss . . . [the] complaint . . . if the complaint in fact failed to meet the minimum pleading standards set forth in Rule 8(a)." Wynder, 360 F.3d at 79.

B.   Rule 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), a court must "constru[e] the complaint liberally, accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)). Furthermore, "[t]he Supreme Court has long held that courts must construe pro se complaints liberally, applying less stringent standards than when a plaintiff is represented by counsel." Elliott v. Bronson, 872 F.2d 20, 21 (2d Cir. 1989) (per curiam) (citing Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983) (per curiam); Hughes v. Rowe, 449 U.S. 5, 9, 101 S. Ct. 173, 175 (1980); and Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 595 (1972) (per curiam)); see also Ferran v. Town of Nassau, 11 F.3d 21, 22 (2d Cir. 1993). "[C]ourts must construe pro se pleadings broadly, and interpret them 'to raise the strongest arguments that they suggest.'" Cruz v. Gomez, 202 F.3d 593, 597 (2d

Cir. 2000) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)). "This is especially true when dealing with pro se complaints alleging civil rights violations." Weixel v. Bd. of Educ. Of N.Y., 287 F.3d 138, 146 (2d Cir. 2002) (citing Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir. 2001)).

On a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974)). Dismissal is warranted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46, 78 S. Ct. at 102; accord Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000); Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994).

The Supreme Court has clarified the standard for dismissal of employment discrimination claims. It held in Swierkiewicz that a plaintiff bringing an employment discrimination claim is required only to comply with the liberal rules for notice pleading set forth in Rule 8(a)(2) of the Federal Rules of Civil Procedure. See Swierkiewicz, 534 U.S. at 508, 122 S. Ct. at 995. "[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . ." Id. at 515, 122 S. Ct. at 999; accord Twombly v. Bell Atlantic Corp., 425 F.3d 99, 107-08 (2d Cir. 2005); Phillip v. Univ. of Rochester, 316 F.3d 291, 298 (2d Cir. 2003);

10

Galvez v. New York Mortg. Co., LLC, No. 05 Civ. 2365 (DLC), 2005 WL 2124112, at *2 (S.D.N.Y. Sept. 1, 2005). As the Supreme Court observed, to hold otherwise not only would "narrowly constrict the role of the pleadings," but also would be inappropriate in certain cases, such as where a plaintiff, following discovery, may "produce direct evidence of discrimination." Swierkiewicz, 534 U.S. at 511, 122 S. Ct. at 997 (internal citation and quotation marks omitted).

However, "[w]hile the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996) (citing Albert v. Carovano, 851 F.2d 561, 572-73 (2d Cir. 1988) (en banc)); and Martin v. N.Y. State Dep't of Mental Hygiene, 588 F.2d 371, 372 (2d Cir. 1978) (per curiam) ("naked assertions" and "wholly conclusory" allegations insufficient to survive a Rule 12(b)(6) motion in Title VII case). It must be clear from a discrimination complaint "what adverse employment action or actions serve as the basis for [a plaintiff's] . . . discrimination claim [thereby] giv[ing] fair notice in her complaint of the grounds upon which her claim that those actions were discriminatory rests." Galvez, 2005 WL 2124112, at *4.

Finally, "[o]n a motion to dismiss, the court may consider 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference." Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47

11

(2d Cir. 1991)); see also Fed. R. Civ. P. 10(c) ("Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

## II. Application to Plaintiff's Claims

Given the Supreme Court's ruling in Swierkiewicz, the two questions relevant to the instant motion are (1) whether Plaintiff's Second Amended Complaint has given Defendant fair notice of her claims and the grounds upon which they rest, and (2) whether the facts alleged state claims for race, national origin, gender, and age discrimination, as well as unlawful retaliation. In resolving the motion, the Court may consider Plaintiff's Second Amended Complaint, as well as the documents labeled "Instances of Discrimination & Unequal Treatments" and "Instances of Retaliation," as they are attached to, and incorporated by inference into, the Second Amended Complaint. (See Second Am. Compl. at 13.)

Defendant contends that Plaintiff's Second Amended Complaint is an example of "rambling, prolixity, and verbosity" that places an "unjustified burden on the Court and the Defendant," violating Rule 8's pleading requirements. (Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def.'s Mem."), at 4-5.) Defendant contends that the Second Amended Complaint contains rambling narrative that is repetitive, vague, and ambiguous, and that also

12

lacks relevant details that are essential for Defendant to prepare an answer. (See id. at 2-5.) Further, Defendant argues that the allegations that can be gleaned from the Complaint fail to adequately set forth discrimination and retaliation claims.

While Plaintiff's Second Amended Complaint is not a model of clarity or conciseness, it must be recognized that Plaintiff is proceeding pro se and that her first language is Chinese. Construing the Second Amended Complaint liberally, the Complaint adequately states claims for relief.

### A. Disparate Treatment Claim

Defendant contends that Plaintiff's disparate treatment claims should be dismissed because the Second Amended Complaint fails to state a claim under Title VII or the ADEA. (See Def.'s Mem. at 5-11.) Specifically, Defendant contends that Plaintiff fails to "show that the actions she complains about were taken against her **because** of her age, race, national origin or sex." (Id. at 7) (emphasis in original).

### 1. Discrimination Claim Based Upon Race and National Origin

With regard to race and national origin, the Complaint adequately states a disparate treatment claim, as well as a claim of hostile work environment. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,

13

because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).[4]  Under this rubric, Title VII bars conduct that creates an "environment [that] would reasonably be perceived, and is perceived, as hostile or abusive . . . ." Harris v. Forklift Systems, Inc., 510 U.S. 17, 22, 114 S. Ct. 367, 371 (1993).  To constitute a prohibited hostile work environment under Title VII, "the workplace [must be] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (quoting Harris, 510 U.S. at 21, 114 S. Ct. at 370) (internal citations and quotations marks omitted).

Plaintiff alleges that she and her team members were treated differently from other teams in the company and were isolated and classified as the "Asian team" based upon their race and national origin. (See Second Am. Compl. ¶ 8.)  Specifically, Plaintiff alleges that she and her team never had division meetings while

---

    [4]   Claims of employment discrimination brought pursuant to Title VII and the ADEA are analyzed under the burden-shifting approach established in McDonnell Douglas. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, 93 S. Ct. 1817, 1824-25 (1973); O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 311, 116 S. Ct. 1307, 1309-10 (1996) (applying McDonnell Douglas test in ADEA context); Woroski v. Nashua Corp., 31 F.3d 105, 108 (2d Cir. 1994) (same).  Under the burden-shifting test, to establish a prima facie case of discrimination, a plaintiff must show: (i) membership in a protected group; (ii) qualification for the job in question; (iii) an adverse employment action; and (iv) circumstances that support an inference of discrimination. See Swierkiewicz, 534 U.S. at 510, 122 S. Ct. at 996 (citing McDonnell Douglas, 411 U.S. at 802-03, 93 S. Ct. at 1824-25).

other teams did, and that Defendant failed to provide them with the company's rules and regulations, which other teams had received. (See id. ¶ 4.) Plaintiff also alleges that her team was excluded from participating in certain company events. (See Instances of Discrimination & Unequal Treatments ¶ 3.) Plaintiff raised these concerns with Defendant on September 17, 2003. (See Second Am. Compl. ¶ 8.) In response, Marchany directed Plaintiff not to deal directly with him anymore and said, "I don't care how your team operates, you Chinese know how to deal with your own people." (Id. ¶ 9.) Plaintiff alleges that other teams had direct communication with company officials and had their grievances and issues rapidly resolved. (See id. at 11; Instances of Discrimination & Unequal Treatments at 1, ¶ 5.)

Plaintiff also alleges that her team members "experienced different levels of harassment by the Defendant . . . ." (Second Am. Compl. ¶ 11.) Marchany "pointed to each and everyone in a close distance and yelled at them and asked 'You want to go too? Go now.' When he heard [] no response, he raised his voice and pointed his finger and asked each and everyone at the meeting 'You, Chinese people, don't play with me. You, you, you stay or go.'" (See id. at 10-11.) Her team members were subsequently terminated or quit their jobs. (See id. at 11 & ¶ 11.)

Plaintiff herself was terminated on November 10, 2003. (See id. ¶ 32.) Plaintiff contends that her job performance had never been criticized and that her termination was unjustified. (See id.

¶ 20; Instances of Discrimination & Unequal Treatments ¶ 12.) When Plaintiff asked Marchany for the reason for her termination, Marchany answered, "no reason is my reason, because you don't deserve the bonus . . . ." (Id.) After Plaintiff was terminated, Marchany yelled to her, "You are wors[e] than my mother, you Chinese old woman. Now get out of my office . . . . " (Id.)

Defendant contends that, although Plaintiff alleges that she received different treatment as Manager of the "Asian Team," she fails to allege facts that support an inference of race or national origin discrimination because the Manager of the other Asian team, her supervisor Wu, and Plaintiff, herself, are all of Chinese descent. (See Def.'s Mem. at 8.) However, Plaintiff does not merely allege that she and her team were treated less favorably than the other Asian team. She alleges that other teams generally received better treatment. (See Second Am. Compl. ¶¶ 4, 8; Instances of Discrimination & Unequal Treatments ¶¶ 5A, 7.) Moreover, "[w]hether or not [Plaintiff] has correctly defined which employees are similarly situated to her . . . is a question of fact that is not appropriately resolved on a motion to dismiss." Gratton v. JetBlue Airways, No. 04 Civ. 7561 (DLC), 2005 WL 1251786, at *8 (S.D.N.Y. May 25, 2005) (citing Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003)); accord Arbercheski v. Oracle Corp., No. 05 Civ. 591 (DLC), 2005 WL 2290206, at *4 (S.D.N.Y. Sept. 19, 2005).

16

The facts that Plaintiff has alleged give Defendant fair notice of Plaintiff's claims and the grounds upon which they rest. In Swierkiewicz, a complaint that "detailed the events leading to [plaintiff's] termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination" satisfied the requirements of Rule 8. Swierkiewicz, 534 U.S. at 514, 122 S. Ct. at 999; accord Wynder, 360 F.3d at 79-80 (a complaint alleging that Plaintiff was required to perform tasks that unnamed white counselors were not required to perform, and alleging an incident reflecting racial animus, were sufficient to state claim for racially disparate treatment); Gratton, 2005 WL 1251786, at *8 (complaint detailing circumstances of disparate treatment satisfied Rule 8); Aguilar, 2002 WL 844397, at *2 (failure to provide relevant dates does not render complaint fatally defective). In the instant case, Plaintiff alleges relevant dates, key actors, describes the events leading to her termination, and provides a general description of the circumstances she believes to be discriminatory, and which allegedly gave rise to a hostile work environment based on race and national origin.

A more detailed account of the allegedly discriminatory conditions of employment is not required at this stage. Defendant's arguments challenge the merits of Plaintiff's claims and are largely addressed to whether Plaintiff has stated a prima facie case of discrimination, rather than whether the Second

Amended Complaint states a claim for relief. Although Plaintiff tends to ramble in the Second Amended Complaint, which is at times vague and ambiguous, further details of Plaintiff's claims can be fleshed out in discovery. Plaintiff's discrimination claims based upon race and national origin are sufficient to survive a motion to dismiss.

### 2. Gender Discrimination Claim

Defendant contends that Plaintiff fails to "tie[ her] alleged 'unfair and bias' treatment to her . . . sex . . . ." (Def.'s Mem. at 8.) The Court disagrees.

Plaintiff alleges that she was subjected to different treatment with respect to managerial benefits, compared to other male managers with less seniority. (See Second Am. Compl. at 9-10.) Specifically, Plaintiff alleges that other newly promoted male managers with less seniority were given the latest model company car and received their standard managerial package within one week of their promotion, while she never received her managerial benefits and was given "a very bad shape and dangerous condition company car – which failed to pass inspection." (See id.) Furthermore, after Plaintiff was terminated, Marchany yelled to Plaintiff, "You are wors[e] than my mother, you Chinese old woman. Now get out of my office . . . . " (Second Am. Compl. ¶ 32.) She

has thus alleged differentiation in treatment based on her gender, as well as a gender-based disparaging remark.[5]

These facts give Defendant fair notice of Plaintiff's claim of gender discrimination and the grounds upon which it rests. Further details may be elicited during pretrial discovery.

### 3. Age Discrimination Claim

The ADEA provides that it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA's protection extends to individuals who are forty years of age or older. See 29 U.S.C. § 631.

Defendant contends that Plaintiff fails to "tie[ her] alleged 'unfair and bias' treatment to her age . . . ." (Def.'s Mem. at 8.) The Court disagrees. Plaintiff alleges that she was not promoted to the position of Associate Director, while a younger, less

---

[5]Plaintiff is not required at this stage to identify exactly which male managers received more favorable treatment than she did. See Wynder, 360 F.3d at 79-80 (plaintiff's allegation that he received more onerous and degrading tasks than unnamed white employees deemed sufficient); Gratton, 2005 WL 1251786, at *8 (citing Mandell, 316 F.3d at 379) (plaintiff's allegations that she was denied an opportunity to switch shifts with other employees, a benefit afforded to almost all of the workforce, that her employer demanded doctor's note certifying her fitness to work, while other unnamed employees were not required to do so, and of other incidents of differentiated treatment between her and other unnamed individuals, deemed sufficient).

experienced manager was promoted to that position. (See Instances of Discrimination & Unequal Treatments ¶ 2.)   Plaintiff also alleges that, after her termination, Marchany yelled to her, "You are wors[e] than my mother, you Chinese old woman.  Now get out of my office . . . ." (Second Am. Compl. ¶ 32.)   This disparaging remark evidences some animus based upon age.

Although the Complaint is short on details relevant to Plaintiff's age discrimination claim, further facts may be elicited in discovery or by making a motion for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. See Swierciewicz, 534 U.S. at 514, 122 S. Ct. at 998.

B.  Retaliation

Plaintiff also asserts a retaliation claim under Title VII. (See Second Am. Compl. ¶¶ 27, 29-32; Instances of Retaliation at 3, ¶ 5; Instances of Discrimination & Unequal Treatments ¶ 12.)   Title VII forbids discrimination against an employee "because [s]he has opposed any practice made an unlawful employment practice . . . or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" the auspices of that statute. 42 U.S.C. § 2000e-3(a).  For a plaintiff's conduct to constitute participation in a protected activity, it is enough that she has made "informal protests of discrimination, including making complaints to management." Gregory, 243 F.3d at 700-01.

Defendant argues that Plaintiff's retaliation claim should be

20

dismissed because Plaintiff had not engaged in activities protected by Title VII. (See Def.'s Mem. at 11-16.) Specifically, Defendant asserts that Plaintiff's internal complaints about management practices and her reports of company "wrong-doing" do not constitute protected activities as defined by Title VII. (See id. at 12-14.) However, Defendant bases its arguments only on a partial description of the facts alleged in the Second Amended Complaint. Plaintiff does allege that she made complaints regarding management practices (see Second Am. Compl. ¶¶ 5, 6, 9), and that she made internal reports of company "wrong-doing" (see id. ¶¶ 19, 22-23). However, she also alleges that beginning on May 20, 2003, she complained of Defendant's "discriminatory" conduct, and that she threatened to file an EEOC complaint after her bonus was withheld by Defendant. (See id. ¶ 29.) Thus, the Complaint alleges that Plaintiff engaged in protected activity. Moreover, "[t]he plaintiff is only required to have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII." McMenemy v. City of Rochester, 241 F.3d 279, 285 (2d Cir. 2001). Whether a plaintiff's belief is reasonable must be "assessed in light of the totality of the circumstances." Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998).

Plaintiff has also alleged adverse employment actions against her, namely the denied bonus and her termination immediately after her threat to file an EEOC complaint. (See Second Am. Compl. ¶ 32.)

Having identified protected activity and adverse employment actions subsequent to that activity, Plaintiff has fulfilled her obligation under Rule 8(a) to provide Defendant with fair notice of her retaliation claim and the grounds upon which it rests. Accordingly, Defendant's motion to dismiss Plaintiff's retaliation claim is denied.

## CONCLUSION

For the reasons discussed, the Second Amended Complaint furnishes fair notice of Plaintiff's claims and the grounds upon which they rest. The Second Amended Complaint adequately states claims for unlawful discrimination on the basis of national origin, race, gender, and age, hostile work environment, and retaliation. Accordingly, Defendant's motion to dismiss is denied.

Denial of Defendant's motion in no way suggests that Plaintiff's claims have merit. Following the completion of discovery, the merits of the claims can be tested.

SO ORDERED.

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated:  January 24, 2006
        New York, New York

Copies mailed to:

Ms. Alice Lee
P.O.Box 173
Flushing, New York 11358

Elissa Hutner, Esq.
201 West 85th Street, 8th Floor
New York, New York 10024